IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| JACKLYN WYNN,<br><br>    Plaintiff,<br><br>    v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>    Defendant. | Civil Action No. 8:11-cv-01287-AW |

## MEMORANDUM OPINION

Plaintiff Jacklyn Wynn brings this action against Defendant Hewlett-Packard Company. Plaintiff asserts three causes of action: (1) violation of the Maryland Wage Payment and Collection Act; (2) promissory estoppel; and (3) negligent misrepresentation. Pending before the Court are two motions: (1) Defendant's Motion to Dismiss; and (2) Plaintiff's Motion for Leave to File Surreply ("Motion for Leave"). The Parties have fully briefed the matter and the Court deems no hearing necessary. For the reasons that follow, the Court **GRANTS** Defendant's Motion to Dismiss and **DENIES AS MOOT** Plaintiff's Motion for Leave.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

One can trace the instant dispute to an employment relationship between Plaintiff Jacklyn Wynn ("Wynn") and Defendant Hewlett-Packard Company ("Hewlett"). The Court takes the following facts from Wynn's Complaint and assumes their truth for the purpose of ruling on Hewlett's Motion to Dismiss.

Wynn started working for Hewlett on November 4, 1996 as a "Director" in the "Channels, Federal Division." Doc. 2 ¶ 8. Wynn rose in Hewlett's ranks over the years, ultimately reaching the position of Vice President for Global Operations. *Id.* ¶ 9.

At some time during her employment, Wynn negotiated "performance-based restricted stock units." *Id.* ¶ 10. These stock benefits were scheduled to vest on Wynn's fifteenth anniversary with Hewlett. *Id.* ¶ 11; *see also id.* ¶¶ 19–20.

Wynn retired from Hewlett on September 14, 2010, approximately fourteen months shy of her fifteenth anniversary. *Compare id.* ¶ 8, *with id.* ¶ 11. Around the time of her retirement, Wynn grew worried that her contemplated retirement might affect her eligibility for the stock benefits. *Id.* ¶ 10. Wynn communicated her concerns to Hewlett, and Hewlett referred her to its financial management agents at Merrill Lynch. *Id.* According to Wynn, the Merrill Lynch agents told her that "she could ask [Hewlett] . . . to accelerate the vesting of the [stock benefits] and prorate their distribution, which she did." *Id.* ¶ 11. Stated differently, "Merrill Lynch . . . represented to Ms. Wynn that she could have [Hewlett] accelerate the vesting of her restricted stock . . . [to] six weeks before her 15th anniversary." *Id.* ¶ 19. Allegedly, Wynn "relied on Merrill Lynch's representations that she could accelerate her vesting to make the decision to retire" before her stock benefits vested. *Id.* ¶¶ 12, 21.

After Wynn retired, Hewlett informed her that she was ineligible for the stock benefits because she retired before they vested. *Id.* ¶ 22. As a result, Wynn alleges that she forfeited $250,000 in stock benefits.

On or about March 31, 2011, Wynn initiated the instant action in Montgomery County Circuit Court. *See* Doc. 1. On May 12, 2011, Hewlett removed the case to this Court. *Id.* Wynn's Complaint was filed on the same day. Doc. 2. On May 31, 2011, Hewlett filed its Motion to

Dismiss. Doc. 10. After the Parties fully briefed the instant Motion, Wynn filed her Motion for Leave. Doc. 14. The Court declines to consider Wynn's Motion for Leave as (1) the Parties have fully briefed Hewlett's Motion to Dismiss and (2) the Court herein grants the Motion to Dismiss with prejudice. Accordingly, the Court denies Wynn's Motion for Leave as moot and proceeds to discuss the subject Motion to Dismiss subsequent to stating the applicable standard of review.

## II.   STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations

devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. LEGAL ANALYSIS

Wynn asserts three claims: (1) violation of the Maryland Wage Payment and Collection Act ("Wage Act"); (2) promissory estoppel; and (3) negligent misrepresentation. Hewlett urges the Court to dismiss each claim. The Court agrees that Wynn states no cognizable claims. The Court explains why this is so in the space below.

**A.     Wage Act**

In pertinent part, the Wage Act provides that "each employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment." Md. Code Ann., Lab. & Empl. § 3-505(a). The Wage Act defines wages as "all compensation that is due to an employee for employment," including "any other remuneration promised for service." *Id.* § 3-501(c)(1), (v). The Maryland Court of Appeals has construed this definition to mean that the employer must have promised the employee the payment as compensation for services for the payment to qualify as a wage. *Whiting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667, 671–72 (Md. 2001).

The employer promises the employee compensation for services only when the employee fulfills all the conditions required to earn the compensation. *Catalyst Health Solutions, Inc. v.*

*Magill*, 995 A.2d 960, 961–62 (Md. 2010).[1] In *Catalyst Health*, the Maryland Court of Appeals considered whether an employer promised unvested stock options as compensation for services where (1) the employer conditionally granted the stock options pursuant to an unambiguous agreement and (2) the employee failed to fulfill the agreement's conditions. 995 A.2d at 962. The agreement under which the employer granted the stock options provided that the stock options vested no earlier than April 16, 2006. *Id.* at 964. The employer fired the employee on April 5, 2006 and blocked his brokerage account. *Id.* at 964–65. On these facts, the *Catalyst* court held that "the conditionally granted unvested incentive stock options were not wages under the Wage Act." *Id.* at 961. The Court's reasoning was straightforward: the employee failed to fulfill the continued employment service condition that the agreement to which he assented comprehended. *Id.* at 961–62.

One cannot materially distinguish this case from *Catalyst*. Here, like in *Catalyst*, Wynn's own factual averments lead ineluctably to the inference that she failed to fulfill the precondition on which the vesting of the stock benefits depended. For Wynn alleges that the stock benefits

---

[1] The Maryland Court of Appeals enunciated an exception to this rule in *Medex v. McCabe*, 811 A.2d 297 (Md. 2002). The *Medex* court held that incentive fees (i.e. a commission) constituted wages even though (1) the employer conditioned their receipt on the employee's being employed when the employer had to actually pay the incentive fees and (2) the employee was no longer employed at that time. *See id.* at 302–03. The *Medex* court cabined the scope of its holding, however. In reaching the conclusion that the incentive fees constituted wages under the Act, the Court laid considerable stress on two factors. *See id.* at 300–02. First, the incentive fees related directly to the sales that the employee made and the employee reached his sales target. *See id.* at 300, 302. Second, even though the employee was no longer employed when the employer had to actually pay the incentive fees, the employee was employed throughout the applicable fiscal year. *See id.* at 302. Hence, the Court deemed immaterial the condition that the employee had to be employed at the time of payment. *See id.* at 301–02; *see generally D'Angella v. Automated Bus. Power, Inc.*, Civil Action No. 11-CV-00487 AW, 2011 WL 4571671, at *2–3 (D. Md. Sep. 29, 2011) (discussing *Catalyst Health* and *Medex* and expounding how *Medex* amounts to only a limited exception to *Catalyst Health*'s near-categorical rule that the employee must fulfill all the conditions required to earn the compensation for it to count as a wage under the Act). In this case, Wynn does not allege that Hewlett directly tied the stock benefits in dispute to her sales performance. Indeed, Wynn does not allege that she sold anything. Furthermore, even if she did, the Complaint leaves no indication that Wynn fulfilled her sales target within the applicable fiscal year. Accordingly, the narrow exception that the Court of Appeals enunciated in *Medex* is manifestly inapplicable to the case at bar.

were scheduled to vest on her fifteenth anniversary with Hewlett, at which time she was no longer employed with Hewlett. In other words, just as the employee in *Catalyst* stopped working for the employer before the date on which the stock options were scheduled to vest, similarly does Wynn allege that she retired fourteen months shy of the date on which the stock benefits were scheduled to vest. In short, Wynn's own factual contentions compel the conclusion that she failed to fulfill the precondition on which the vesting of the stock benefits hinged. Therefore, *Catalyst* dictates that the Court dismiss her Wage Act claim.[23]

**B.     Promissory Estoppel**

To prevail on a promissory estoppel claim, plaintiffs must satisfy four elements: "(1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise." *Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521, 532 (Md. 1996) (citing Restatement (Second) of Contracts § 90(1) (1979)).

---

[2] Wynn suggests in her opposition that there was no requirement that she stay employed with Hewlett until her fifteenth anniversary for the stock benefits to vest. This suggestion suffers from two salient flaws. First, one can locate these assertions nowhere in the Complaint. Second, even if one could find them in the Complaint, they would still amount to artful pleading. Therefore, consistent with *Iqbal*, they would not be entitled to the assumption of truth. For instance, Wynn writes that "there was **apparently** no requirement that [Wynn] had to remain employed [with Hewlett] to receive [the stock benefits]." Doc. 11 at 2 (emphasis added). Similarly, Wynn states that "[t]here **appeared** to be no condition imposed on Ms. Wynn that she had to remain [employed with Hewlett] to receive them." *Id.* (emphasis added). In the same vein, Wynn writes that "**[a]pparently**, [Hewlett] issued Ms. Wynn a 37[-]page booklet explaining [that she did not have to remain employed for fifteen years for the stock benefits to vest]." *Id.* at 2–3 (emphasis added). Hollow, equivocal averments raised in a responsive brief cannot, as a matter of law, salvage a facially implausible complaint.

[3] One could cogently argue that the facts in *Catalyst* are more egregious than the facts in this case. In *Catalyst*, the employer's *firing* of the employee prevented the employee from fulfilling the service condition upon which the vesting of the stock options was contingent. Furthermore, the employer terminated the employee just eleven days before the stock options were scheduled to vest. Here, dissimilarly, Wynn voluntarily resigned almost fourteen months before the stock benefits were scheduled to vest. Thus, all else equal, if the stock options in *Catalyst* did not constitute wages within the meaning of the Act, one can conclude a fortiori that the stock benefits do not.

In this case, Wynn's sparse factual allegations insufficiently state the existence of a clear and definite promise. The only allegation that comes close to constituting a promise is the statement that "Merrill Lynch . . . represented to Ms. Wynn that she **could have** [Hewlett] accelerate the vesting of her restricted stock . . . [to] six weeks before her 15th anniversary." Doc. 2 ¶ 19 (emphasis added); *see also id.* at ¶ 12 (emphasis added) (alleging that she "relied on Merrill Lynch's representations that she **could** accelerate her vesting to make the decision to retire when she did"). Assuming *arguendo* that this allegation arises to a clear promise, it still insufficiently states that the promise was definite. For the allegation supports the inference that Wynn merely had the *ability to ask* Hewlett to accelerate the vesting of the stock benefits, not that Merrill Lynch *definitively promised* Wynn that her benefits would vest before her retirement. Indeed, Wynn alleges elsewhere in the Complaint that "[t]he Merrill Lynch agents . . . told Ms. Wynn . . . that she **could ask** [Hewlett's] Human Resources division to accelerate the vesting of the [stock benefits]." *Id.* ¶ 11 (emphasis added). In short, Wynn has not adequately alleged the existence of a definite promise.[4] *See Kline v. Home Depot Inc.*, Civil Action No. RDB-08-990, 2009 WL 2246656, at *9 (D. Md. July 27, 2009) (emphasis added) (some internal quotation marks omitted) (defendant's mere representation to the plaintiff that "he **could** be re-hired at a future date" "does not reveal the occurrence of a clear and definite promise").

Even if Wynn sufficiently stated the existence of a clear and definite promise, her allegations are inadequate to satisfy the fourth element of a promissory estoppel claim: that the

---

[4] As stated in note 2, *supra*, Wynn's opposition further highlights the hollow, equivocal nature of her assertions concerning Merrill Lynch's purported misrepresentations. Although the Court does not rely on Wynn's opposition for the purpose of ruling on Hewlett's Motion to Dismiss, the Court may consult plaintiffs' legal briefs to clarify the meaning of ambiguous complaints. *See Pegram v. Herdrich*, 530 U.S. 211, 230 & n.10 (2000). Although the opposition indicates that Merrill Lynch told Wynn that she would receive at least a percentage of her stock benefits if she retired early, see Doc. 11 at 3, the opposition equally supports the inference that no such guarantee was ever made, see *id.* at 2. *See also* note 2, *supra*. Thus, if anything, the opposition further muddles the mess that the Complaint embodies.

promise caused a detriment which can only be avoided by the enforcement of the promise. By her own words, Merrill Lynch represented to Wynn that she could have Hewlett accelerate the vesting of her stock benefits to "six weeks before her 15th anniversary." Doc. 2 ¶ 19. Yet Wynn avers that she retired from Hewlett on September 14, 2010, which is approximately fourteen months shy of her fifteenth anniversary. *Compare id.* ¶ 8, *with id.* ¶ 11.[5] Therefore, even had Hewlett honored this promise, Wynn still would have retired well before the date on which Hewlett promised that the stock benefits would vest. Consequently, she would not have been eligible for the stock benefits. Accordingly, the detriment of which she complains (losing the $250,000) was not avoidable *only* by the enforcement of the promise. Wynn thus fails to state a cognizable claim for promissory estoppel.

**C.     Negligent Misrepresentation**

To prevail on a negligent misrepresentation claim, plaintiffs must satisfy four elements: "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 273 (Md. 2007) (citations and internal quotation marks omitted).

---

[5] Wynn suggests in her opposition that she did not have to stay with Hewlett for fifteen years for the stock benefits to vest. *See* Doc. 11 at 4. Yet the equivocal and contradictory quality of Wynn's other contentions casts doubt on this suggestion. For example, Wynn writes that Hewlett's "main point is [that] somehow Ms. Wynn was wildly unmindful of her retirement date and she miscalculated it by 14 months." *Id.* Wynn further writes that Hewlett "bases this on [Hewlett's] allegation that [Wynn] started with [Hewlett's] predecessor, Compaq, on November 4, 1996." This line of reasoning overlooks that Wynn, not Hewlett, alleges that she started working for Hewlett in 1996. Doc. 2 ¶ 8. In fact, Wynn seems to concede elsewhere in her opposition that she started working for Hewlett in 1996. *See* Doc. 11 at 2 (stating that Wynn started "with [Hewlett] as director of a division in 1996").

In this case, Wynn fails to adequately allege satisfaction of the first, third, and fifth elements. As for element one, Wynn fails to plausibly state that either Hewlett or Merrill Lynch made a false statement. To reiterate, Wynn alleges that Merrill Lynch told her that she "could have" Hewlett accelerate the vesting date of her stock benefits. In other words, the allegations lead to the inference that Merrill Lynch told her merely that she had the *ability to ask* Hewlett to accelerate the vesting of the stock benefits, not that Hewlett guaranteed that the benefits would vest before the date on which Wynn voluntarily retired. The Complaint bears no indication that this statement was false. On the contrary, Wynn herself states that she approached Hewlett about how her retirement might affect the vesting of her stock benefits. Doc. 2 ¶¶ 9–10.

Nor does the Complaint sufficiently state that Wynn justifiably relied on the purported misrepresentations. As a matter of logic and common sense, Merrill Lynch's alleged statement that Hewlett would accelerate the vesting of Wynn's stock benefits to six weeks before her fifteenth anniversary would not justify Wynn's decision to retire roughly a year before this event. Although she makes no such allegation, perhaps Wynn mistook her fourteenth anniversary for her fifteenth. Either way, such a misunderstanding does not arise to justifiable reliance. Were it otherwise, plaintiffs could avail themselves of their own heedlessness to hale parties into Court and drag them through the litigation process. This outcome would be burdensome, inefficient, and counterintuitive. Maryland law does not sanction it.

Finally, even had Wynn in some parallel universe adequately alleged the first four elements of negligent misrepresentation, Wynn nevertheless fails to cognizably contend that Hewlett's professed negligence proximately caused the injury of which she complains. Not to belabor the point, but it bears emphasis that Wynn retired about a year before the date by which Merrill Lynch supposedly stated that her stock benefits would vest. The date that the statement

represents and the detrimental act that Wynn asserts flows from it lack a sufficient temporal nexus for one to plausibly conclude that the statement proximately caused the detriment. Accordingly, Wynn fails to state a facially plausible claim for negligent misrepresentation.

In sum, Wynn has failed to state cognizable claims for the following causes of action: (1) violation of the Wage Act; (2) promissory estoppel; and (3) negligent misrepresentation. Therefore, the Court grants Hewlett's Motion to Dismiss. This dismissal is **with prejudice**. Although Wynn has had only one bite at the apple, there is no reason to think that a second bite would bear fruit. Wynn is represented by counsel, she set forth her claims in reasonable detail, and her opposition further elucidates the artful and equivocal nature of her legal theories.[6] Simply put, Wynn has pleaded herself out of Court.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss and **DENIES AS MOOT** Plaintiff's Motion for Leave. A separate Order follows.

| January 12, 2012 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |

---

[6] Notably, Wynn has failed to move for leave to amend her Complaint. Nor has she filed a motion for discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure on the ground that facts essential to justifying her opposition are unavailable to her. *See* Fed. R. Civ. P. 56(d).